THOMAS v. BACHE.

1. Brokers — Marginal Transactions — Authority — Finding of Court.

In action of assumpsit for value of stock which defendants, stock brokers, refused to deliver to plaintiff because amount on deposit in plaintiff's account was insufficient to cover margin on other stock then claimed to have been held on her account, finding of trial court that preponderance of evidence supported plaintiff's claim that she had not authorized purchase of said other stock *held*, sustained by record presented as against defendant's claim that plaintiff's last deposit was made pursuant to defendants' telegraphic demand for more margin.

2. Appeal and Error—Damages—Record.

On plaintiff's cross-appeal because of alleged inadequacy of damages found by court sitting without a jury, judgment, as corrected by trial court in accordance with specific claims of her attorneys in bill of particulars as filed with declaration and as amended, is not disturbed where record on the trial does not disclose amount plaintiff claimed the right to recover and motion to correct the judgment does not appear in the record.

3. COSTS—APPEAL BY BOTH PARTIES—AFFIRMANCE.
   No costs are allowed where judgment in assumpsit is affirmed and both parties have appealed.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 6, 1935. (Docket No. 45, Calendar No. 37,806.) Decided September 9, 1935. Rehearing denied October 30, 1935.

Assumpsit by Alice Thomas against Jules S. Bache and others, copartners doing business as J. S. Bache & Company, to recover the value of stock wrongfully sold. Judgment for plaintiff. Defendants appeal. Plaintiff cross-appeals. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg* (*Edward T. Kelley,* of counsel), for plaintiff.

*Finkelston, Lovejoy & Kaplan,* for defendants.

NELSON SHARPE, J. In the fall of 1930 the plaintiff opened an account for trading on margins with the defendants, a firm of stock brokers in the city of Detroit. There were a number of transactions between that date and September, 1931. During that month the defendants purchased for her 100 shares of what are spoken of as Best & Company stock. She testified that on or about October 1, 1931, she delivered to the defendants her check for $1,000 and demanded the stock. The defendants credited it to her account and refused to deliver the stock to her for the reason that her husband, Leo Thomas, had purchased 100 shares of Columbia Carbon stock which had been charged to her account and the amount of the check was not sufficient to release her Best & Company stock under their margin agreement. She brought this action to recover the value

of the Best & Company stock. On trial before the court without a jury she had judgment for $2,651.27, from which both the plaintiff and the defendants have appealed. The defendants contend that the judgment should have been entered in their favor, and the plaintiff insists that it should have been for not less than $3,267.77.

The question presented on defendants' appeal is whether plaintiff's husband was acting as her authorized agent in making the purchase of the Columbia Carbon stock. The record discloses that he had before that time made purchases which were charged to her account, and defendants claim that they included them in the statements sent to her and she had impliedly consented thereto.

She testified that shortly before September 1, 1931, her husband told her that he had purchased for her account some Auburn stock and that she had called defendants' manager, Mr. Ranney, and told him that anything he sold to her husband after that would be at defendants' risk. Mr. Ranney denied that she had done so.

The testimony which the trial judge found most convincing was that of Mary L. O'Donnell. She was the only apparently disinterested witness. In September, 1931, she was in the employ of the defendants as a stenographer and doing office work. She testified:

"After the Auburn stock was purchased, I overheard Mr. Ranney talk with Mrs. Thomas about that Auburn purchase. I knew he was talking with Mrs. Thomas as he said, 'Mrs. Thomas,' and later on in the conversation, shortly before he hung up, he repeated the name of Mrs. Thomas. The other words he used, as I can remember, in the course of that conversation, was mostly 'Yes,' 'All right,' 'Yes.'

After that conversation Mr. Ranney walked back to where I was sitting, and said to the telegraph operator, 'Take no more orders from Leo Thomas.' I say the telegraph operator heard that. Bill Balmes was the telegraph operator. Mr. McKelvey heard it, besides myself. He was standing in the immediate presence.

"To the best of my ability, I remember the conversation to be in the early part of September. I cannot give you the exact date. It was after the Auburn purchase, because at the time we were very much interested in the Auburn stock and the condition of the market. It preceded the Columbia Carbon transaction. I see Westinghouse Electric there. I cannot say whether the conversation came before or after Westinghouse Electric. I remember when the Columbia Carbon order went through. The wire operator was not given those instructions in my presence. I saw the ticket after it came through. I cannot definitely say who O. K.'d it. Mr. Thomas placed that order for Columbia Carbon. When it went through, McKelvey said, 'There is going to be trouble on this;' " that shortly after the Columbia Carbon purchase she was asked to go through her files and look for a power of attorney or letter, signed by plaintiff, authorizing her husband to make purchases for her, and she did so but could find none.

Mr. McKelvey was at that time in the employ of the defendants as a margin clerk. Both he and Mr. Ranney denied that any such conversation was had, or statements made, as she testified to.

In support of their claim of nonliability the defendants put in evidence a telegram, dated October 1, 1931, 9 a. m., addressed to the plaintiff at her home address, in which they advised her that her account was short $1,000 of required margin, and that they had entered an open stop order to sell 100

shares of Columbia Carbon stock at 38 and 100 Best at 25. Mr. Ranney testified that on the afternoon of that day the plaintiff delivered to him her check for $1,000 and said to him, "Mr. Ranney, here is a check for my account. How is the market?" It is, however, clearly established by the testimony of the agent of the telegraph company that the telegram had not been delivered before 7 o'clock on that evening. Counsel stress the fact that the amount of the check was the same as that requested in the telegram. Defendants' records, however, show that her deposits with them were usually in the sum of $1,000 or a multiple thereof.

An issue of fact was thus squarely presented. If the plaintiff had the conversation with Mr. Ranney testified to by Mary L. O'Donnell, and also by the plaintiff herself, the defendants had no right to permit plaintiff's husband to purchase the Columbia Carbon stock and charge it to her account, and their refusal to deliver the Best & Company stock to her when she demanded it rendered them liable to account to her for the value thereof.

The trial court in his opinion, after a careful review of the evidence, held that the preponderance of the evidence supported the plaintiff's claim. He heard and saw the witnesses who testified, and had a better opportunity to judge of their credibility than this court has. There was evidence to support his finding, and with it we concur.

Plaintiff's cross-appeal is based upon the claim that "The damages found by the trial court are inadequate." The record on the trial does not disclose the amount to which plaintiff claimed the right to recover. The trial court at first entered judgment in her favor for $2,500. On motion of her attorney he corrected it and entered judgment for $2,651.27.

In the bill of particulars attached to plaintiff's declaration when filed, her demand was thus stated:

"Oct. 1, 1931—Plaintiff's credit balance $  467.77
"Dec. 15, 1931—Dividend on 100 shares of
    Best & Company Stock...............   50.00
"Dec. 18, 1931—Sold 100 shares of Best
    & Company stock...................  2,133.50
                                      —————————
                                       $2,651.27"

In an amended bill thereafter filed she claimed damages under the first count for the 100 shares of Best & Company stock, $3,500. "The same represents the value of said stock for the period between October 1st and November 15, 1931." Under the second and third counts she made claim for the value of the stock when sold by defendants on December 18, 1931, $2,133.50 and $50 for a dividend received thereon. Under the fourth count she claimed for her credit balance of $467.77, and under the fifth or common counts her claim was stated as at first filed for $2,651.27.

The motion to correct the judgment does not appear in the record. In view of the specific claims made by her attorneys in the bill of particulars as first filed, and as amended, we do not feel called upon to consider the claim here made that the judgment is inadequate.

It is affirmed. As both parties have appealed, no costs will be allowed.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.